<pre>
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WISCONSIN
_____

SRINIVASA MUSUNURU,
                      Petitioner,

v.                                              Case No. 14CV088

ERIC H. HOLDER, JR., et al.,
                      Respondents.
_____
</pre>

## DECISION AND ORDER

Petitioner, an Indian citizen currently in the United States on an employment visa, brings this action under the Administrative Procedure Act ("APA") seeking review of various actions of the U.S. Citizenship and Immigration Services ("USCIS"). Petitioner contends that USCIS's conduct led to the wrongful revocation of a petition by his former employer which resulted in a delay in his ability to become a permanent resident of the United States. Before me now is respondents' motion to dismiss.

**I. Background**

Under the Immigration and Nationality Act ("INA"), a noncitizen worker such as petitioner undergoes a three-step process to obtain permanent residency. First, his employer applies for a labor certification from the Department of Labor. 20 C.F.R. § 656.17(a)(1); *see also* 8 U.S.C. § 1182(a)(5). Second, the employer submits an I-140 visa petition to the USCIS on the employee's behalf. 8 C.F.R. § 204.5(l)(1); *see also* 8 U.S.C. § 1153(b)(3)(c). The employer must include in the petition a valid labor certification and evidence that the employee satisfies the educational, training, or other requirements dictated by the labor certification, 8 C.F.R. § 204.5(l)(3)(ii), and that the employer can pay the wage specified in the labor certification until the employee obtains permanent resident

status, 8 C.F.R. § 204.5(g)(2). Third, when the USCIS approves the I-140 petition, the employee may apply to adjust his immigration status to that of permanent resident. 8 U.S.C. § 1255(a). To obtain permanent residency, however, an immigrant visa must be immediately available, *id*., and this will depend on the employee's priority date, which is the date the employer applied for a labor certification. 8 C.F.R. § 204.5(d). After an adjustment application has been pending for 180 days, the employee may change jobs or employers without affecting the validity of the I-140 petition (and the employee's priority date) as long as the new position "is in the same or similar occupational classification as the job for which the petition was filed." 8 U.S.C. § 1154(j); 8 C.F.R. § 204.5(e).

In February 2004, Vision Systems Group, Inc. ("VSG"), petitioner's employer, applied for a labor certification on his behalf. In December 2005, the Department of Labor granted certification. VSG then filed an I-140 petition seeking to classify petitioner as a skilled worker or professional under 8 U.S.C. § 1153(b)(3) (commonly referred to as an EB-3 classification). The USCIS approved the petition, and in August 2007, petitioner applied for an adjustment to permanent resident status. While his application was pending, petitioner began a new job with Crescent Solutions. In March 2011, Crescent Solutions filed a I-140 petition on his behalf seeking to classify him as a noncitizen who is a member of professions holding advanced degrees or is of exceptional ability under 8 U.S.C. § 1153(b)(2) (commonly referred to as an EB-2 classification). The USCIS approved the petition, but petitioner retained his February 2004 priority date from the VSG I-140 petition as the INA's portability provisions allow.

In May 2011, VSG was found to have unlawfully hired noncitizen workers. VSG's

officers pled guilty to mail fraud and unlawful hiring and were debarred from participation in the labor certification program. As a result, the USCIS issued to VSG a notice of intent to revoke the I-140 petition VSG obtained on behalf of petitioner. Having gone out of business, VSG failed to respond. The USCIS invalidated VSG's labor certification, revoked its I-140 petition, and notified VSG of its right to appeal. VSG did not appeal. The USCIS did not notify petitioner of any of the proceedings against VSG. The USCIS then amended its approval of Crescent Solution's I-140 petition on behalf of petitioner, changing the priority date from February 2004, when VSG applied for labor certification, to January 28, 2011, when Crescent Solution applied. Petitioner tried to appeal the revocation decision within the USCIS, but the USCIS determined that, as an employee he lacked standing to do so.

## II. Discussion

Petitioner challenges the USCIS's failure to provide him with notice and an opportunity to respond to its revocation of VSG's I-140 petition on his behalf and its denial of his internal appeal of the revocation decision. Respondents first move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of "any . . . decision or action of the Attorney General or Secretary of Homeland Security . . . which is specified under this subchapter to be in the[ir] . . . discretion . . ." While revocation of a previously-approved visa petition is a discretionary decision which I may not review, *El-Khader v. Monica*, 366 F.3d 562, 563 (7th Cir. 2004), petitioner's lawsuit does not challenge the revocation itself but claims that the USCIS failed to follow the correct procedure in revoking the I-140 petition and argues that procedure is

3

not discretionary. *See* 8 C.F.R. § 103.2(b)(16)(i) ("[T]he applicant or petitioner . . . shall be advised of" derogatory information and given an opportunity to be heard.); 8 C.F.R. § 204.5(n)(2) ("The petitioner shall be informed in plain language of the reasons for denial and of his or her right to appeal.); *Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, No. 13-13554, 2014 WL 7242841, at *5 (11th Cir. Dec. 22, 2014) ("Even when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations." (internal quotation omitted)). Based on this authority, I conclude that Congress has not stripped the federal courts of jurisdiction over the claim that plaintiff asserts.

Respondents also contest petitioner's standing to sue, both Article III standing and so-called prudential standing. To establish Article III standing, petitioner must allege (1) a "personal injury" or injury in fact, (2) that the injury is "fairly traceable to the defendant's allegedly unlawful conduct," and (3) that the injury is "likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). An injury in fact is one "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The proponent of jurisdiction must "'set forth' by affidavit or other evidence 'specific facts'" supporting standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting Fed. R. Civ. P. 56(e)).

Petitioner contends that he suffered injury by losing his original priority date, and respondents do not dispute this. Also, at least two circuits have recognized such a loss as

4

a concrete injury for Article III standing purposes. *Kurapati*, No. 13-13554, 2014 WL 7242841, at *3; *Patel v. U.S. Citizenship & Immigration Servs.*, 732 F.3d 633, 638 (6th Cir. 2013). I agree that by being forced to wait longer to become a permanent resident petitioner suffered a concrete, particularized injury. I also conclude that petitioner's injury is traceable to respondents' actions and redressable. Petitioner alleges that respondents failed to give him notice of and an opportunity to be heard regarding derogatory information relevant to VSG's I-140 petition and barred him from appealing revocation of the petition within USCIS in violation of federal regulations and due process, and that these actions directly affected his eligibility for permanent residency. He alleges that had he been able to contest the revocation, he would have shown that it was improper because VSG did not fraudulently obtain a labor certificate on his behalf. He points out that he overcame allegations of fraud regarding his work with VSG when the USCIS attempted to revoke Crescent Solutions's I-140 petition. This is enough to show that respondents' alleged failure to follow required procedures caused his injury and that his injury is redressable because if given the opportunity to be heard, petitioner is likely to succeed in preventing the revocation.

With respect to prudential standing, the APA entitles a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek judicial review of the action. 5 U.S.C. § 702. To bring a claim under the APA, a petitioner's alleged injuries must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). This is not a particularly demanding standard. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388,

399 (1987). I apply the zone-of-interests test "in keeping with Congress's evident intent when enacting the APA to make agency action presumptively reviewable." *Patchak*, 132 S. Ct. at 2210 (internal quotations omitted). "In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke*, 479 U.S. at 399.

I cannot say that petitioner's interests are so marginally related to the purpose of the statute that petitioner should be precluded from suing. Also, when determining whether petitioner's interests are within the zone of interests protected by the statute, I consider not just the regulation at issue but the context and purpose of the statute. *Id.* Although under the statute a noncitizen worker does not petition for a visa, 8 U.S.C. § 1153(b)(3) makes visas available to noncitizen workers. Additionally, other sections of the INA consider the interests of the noncitizen worker. *See, e.g.*, § 1255(a) (permitting noncitizen workers to apply for permanent residence not tied to employment); § 1154(j) (providing status adjustment applicants job flexibility by allowing them to change jobs and employers). Thus, Congress arguably intended to provide some protection of a noncitizen worker's interest in the employment-based visa petition. *See Kurapati*, No. 13-13554, 2014 WL 7242841, at *5 (concluding that "a beneficiary of an I-140 visa petition who has applied for adjustment of status and has attempted to port under § 1154(j) 'falls within the class of plaintiffs' Congress has authorized to challenge the denial of that I-140 visa petition"); *Patel*, 732 F.3d at 635–37 (concluding that "it is arguable, to say the least, that a qualified

alien who wants an employment visa is within that provision's zone of interests"); *Stenographic Machs., Inc. v. Reg'l Adm'r for Emp't & Training*, 577 F.2d 521, 528 (7th Cir. 1978) (concluding that ""the prospective alien employee would be economically injured if not given a [labor] certificate and has an interest which is within the zone of interests to be regulated"). Thus, I decline to dismiss the case for lack of prudential standing.

I turn next to respondents' motion under Fed. R. Civ. P. 12(b)(6) that petitioner's complaint fails to state a claim for relief. With respect to petitioner's contention that he was entitled to pre-revocation notice, 8 C.F.R. § 103.2(b)(16)(i) provides that: "If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered." Petitioner argues that because he had applied for a status adjustment at the time the USCIS sought to revoke VSG's I-140 petition, he was an "applicant" under the regulation and therefore entitled to notice. Respondents argue that "petitioner or applicant" refers to the party initiating the petition or application at issue, here, the employer, VSG.

I conclude that an employee is not "a petitioner or applicant" within the meaning of § 103.2(b)(16)(i) and thus is not entitled to notice. The Department of Homeland Security, promulgator of the regulation, has consistently interpreted it as requiring notice only to the petitioning employer. "[A]n agency's interpretation of its own regulation is controlling unless it is 'plainly erroneous or inconsistent with the regulation,' or there is 'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *U.S. v. P.H. Glatfelter Co.*, 768 F.3d 662, 672–73 (7th Cir. 2014) (quoting

*Auer v. Robbins*, 519 U.S. 452, 461–62 (1997)). I cannot say that respondents' interpretation is plainly erroneous or inconsistent with the regulation, and in fact I find it to be the more persuasive of the two interpretations. The regulation uses the terms "petitioner or applicant," clearly referring to the party filing the petition or application. Further, related regulations refer to the employee not as a petitioner or applicant but as the "beneficiary" of an I-140 petition. *See, e.g.*, 8 C.F.R. § 204.5 (referring to employees as "beneficiaries" in the context of employment-based petitions); 8 C.F.R. § 103.2(b)(9) (distinguishing between applicants, petitioners and beneficiaries). Additionally, the purpose of the regulation was to provide procedural rights to the employer, not the employee. *Matter of Obaigbena*, 19 I. & N. Dec. 533, 536 (BIA 1988) ("[T]he intended purpose of a notice of intention to deny is to provide due process to the petitioner"). Nor does the INA suggest that Congress intended to give employees a right to pre-revocation notice. Under the statute, only an employer may initiate an I-140 petition. *See* § 1154(a)(1)(F) ("Any employer desiring and intending to employ . . . an alien . . . may file a petition with the Attorney General.").

I also conclude that the USCIS's decision that petitioner lacked standing to administratively appeal did not violate federal regulations. The regulations leave little doubt on this point. 8 C.F.R. § 204.5(n)(2) provides that "[t]he petitioner shall be informed in plain language of the reasons for denial of his or her right to appeal," and mentions no one else. Further, 8 C.F.R. §§ 103.4 and 103.5 allow only an "affected party" to administratively challenge a revocation decision and define such a party as "the person or entity with legal standing in a proceeding . . . not includ[ing] the beneficiary of a visa petition." 8 C.F.R. §

103.3(a)(1)(iii). Further, the INA does not suggest congressional intent to authorize an employee to administratively challenge a revocation decision. *Compare* 8 U.S.C. § 1229a(c)(5)–(7) (specifying an alien's rights to administratively challenge a removal decision), *with* 8 U.S.C. § 1155 (describing revocation but conferring no employee right to bring an administrative challenge).

Finally, I turn to petitioner's argument that he has a due process right to pre-revocation notice and/or post-revocation standing to bring an administrative challenge. In order to have a valid due process claim, "a claimant must have a liberty or property interest in the outcome of the proceedings." *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004). A procedural entitlement is not a protected liberty or property interest, *Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006), because "process is not an end in itself[;] [i]ts constitutional purpose is to protect a substantive interest in which the individual has a legitimate claim of entitlement," *Olin v. Wakinekona*, 461 U.S. 238, 250–51 (1983). Thus, petitioner must show a liberty or property interest not in the revocation procedures, but in the end result of those procedures.

"In immigration proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary relief." *Dave*, 363 F.3d at 653. "Thus, an alien's right to due process does not extend to proceedings that provide only discretionary relief, and the denial of such relief does not violate due process." *Hamdan v. Gonzales*, 425 F.3d 1051, 1061 (7th Cir. 2005); *Khan v. Mukasey*, 517 F.3d 513, 518 (7th Cir. 2008) ("[I]t is well-established that a party complaining of a due-process violation must assert a liberty interest in order to maintain his due-process claim. As a result, we have repeatedly held

that an alien's right to due process does not extend to proceedings that provide only . . . discretionary relief because an appeal to discretion is not a substantive entitlement."). The decision whether or not to revoke an I-140 petition that has already been approved is discretionary. § 1155 ("The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154."); *El-Khader*, 366 F.3d at 563 (holding that "the revocation of a previously approved visa petitioner under 8 U.S.C. § 1155 *is a discretionary decision*"). Because petitioner's interest regarding revocation of an I-140 petition is subject to administrative discretion, petitioner does not have a property interest entitled to constitutional protection nor any constitutionally protected procedural rights associated with the government's decision to revoke it. *See Azizi v. Thornburgh*, 908 F.2d 1130, 1134 (2d Cir. 1990) (holding that plaintiffs "do not have an inherent property right in an immigration visa").

Petitioner argues that the Due Process Clause guarantees him a meaningful right to be heard, but the cases he cites for this proposition confer a meaningful right to be heard in deportation proceedings. *See, e.g.*, *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538 (7th Cir. 2005); *Kaczmarczyk v. I.N.S.*, 933 F.2d 588, 595–96 (7th Cir. 1991). "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and the opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (internal quotation omitted). Being taken into custody and deported clearly qualifies as a "serious loss" sufficient to constitute a liberty interest, *see Cevilla*, 446 F.3d at 662 ("[Petitioner] has a liberty interest in remaining in the United

States."), while the loss in the present case, revocation of an I-140 petition and the resulting delay in obtaining permanent residency status does not. Petitioner does not have a constitutionally protected property interest in a petition which the Attorney General has discretion to revoke and has not established that revocation results in a loss serious enough to rise to the level of a constitutionally protected liberty interest. Thus, I conclude that petitioner's due process claim fails.

### III. Conclusion

**THEREFORE, IT IS ORDERED** that petitioner's motion for leave to file surreply (ECF No. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that respondents' motion to dismiss (ECF No. 18) is **GRANTED** and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge